NO. CIV-20-1130-J

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

---

**THE GREEN ROOM SOUL FOOD STEAKHOUSE, LLC et al.,**

**Plaintiffs,**

**v.**

**BRIAN MAUGHAN, in His Official Capacity as District 2
County Commissioner, et al.,**

**Defendants,**

---

**MOTION TO DISMISS PETITION FOR DECLARATORY AND
INJUNCTIVE RELIEF BY DEFENDANT BOARD OF COUNTY
COMMISSIONERS OF OKLAHOMA COUNTY AND DEFENDANTS
BRIAN MAUGHAN AND KEVIN CALVEY, EACH IN HIS OFFICIAL
CAPACITY AS COUNTY COMMISSIONER
WITH BRIEF IN SUPPORT**

---

**AARON ETHERINGTON, OBA # 18,259**

**Assistant District Attorney
Oklahoma County District Attorney's Office
320 Robert S. Kerr, Suite 500
Oklahoma City, OK 73102
(405) 713-1600 Phone
(405) 713-1749 Fax
aaron.etherington@oklahomacounty.org**

**Attorney for Defendants Board of County Commissioners
of Oklahoma County, Brian Maughan, and Kevin Calvey, Each in His
Official Capacity as County Commissioner**

## **TABLE OF CONTENTS**

**INTRODUCTION** .        .        .        .        .        .        .        .        .        1

**ARGUMENT AND AUTHORITIES**   .        .        .        .        .        .        2

**PROPOSITION I:**
Plaintiffs' Request for Declaratory and
Injunctive Relief Presents a Non-Justiciable
Political Question for Which There Is No
Actual Controversy or Standing of Plaintiffs
to File Suit.        .        .        .        .        .        .        .        .        3

    A.  Plaintiffs Lack Standing to Assert Entitlement
to Any Claim for Relief and, Thus, The
Petition Must Be Dismissed for Lack of
Jurisdiction.        .        .        .        .        .        .        .        .        4

    B.  Any Question of the Lawfulness of the
Expenditure of Federal Coronavirus Relief
Funds Presents a Political Question Expressly
Delegated to the Executive Branch.        .        .        .        .        6

    C.  No Actual Controversy Exists Between
Competing Interests as Is Necessary for a
Justiciable Claim.        .        .        .        .        .        .        .        8

**PROPOSITION II:**
Plaintiffs Fail to State a Claim for the Violation
of any Federal Statutory or Constitutional Right
and, Thus, Defendants are Entitled to Dismissal
of The Petition Pursuant to Rule 12(B)(6).        .        .        .        . 9

    A.  The Coronavirus Relief Fund Act Does Not
Create a Private Right Such That Plaintiffs
May Bring an Action to Enforce Its Provisions.        .        .        13

    B.  Plaintiffs Fail to Articulate Any Plausible Claim
For A Violation of the Establishment Clause.        .        .        17

    C.  Plaintiffs Fail to Identify, Much Less Plead a
Plausible Violation of, Any Other Fundamental
Rights upon Which Their Petition for Relief
Is Predicated.        .        .        .        .        .        .        .        19

i

**CONCLUSION** . . . . . . . . . 20

**CERTIFICATE OF SERVICE** . . . . . . . 21

# <u>TABLE OF AUTHORITIES</u>

## Case Law

*Aetna Life Ins. Co. v. Haworth*,
   300 U.S. 227 (1937) . . . . . . . . 9

*Alexander v. Sandoval*,
   532 U.S. 275 (2001) . . . . . . . . 13, 14, 15

*American Atheists, Inc. v. Davenport*,
   637 F.3d 1095 (10th Cir. 2010) . . . . . . . 18

*Anderson v. Suiters*,
   499 F.3d 1228 (10th Cir. 2007) . . . . . . . 11, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) . . . . . . . . 12

*Baker v. Carr*,
   369 U.S. 186 (1962) . . . . . . . . 6, 7

*Barrios v. Haskell Cnty. Pub. Fac. Auth.*,
   432 P.3d 233 (Okla. 2018) . . . . . . . 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) . . . . . . . . 12, 19

*Blessing v. Freestone*,
   520 U.S. 329 (1997) . . . . . . . . 14

*Columbian Fin. Corp. v. BancInsure, Inc.*,
   650 F.3d 1372 (10th Cir. 2011) . . . . . . . 9

*Flast v. Cohen*,
   392 U.S. 83 (1968) . . . . . . . . 3, 11

*Hein v. Freedom From Religion Foundation, Inc.*,
   551 U.S. 587 (2007) . . . . . . . . 4

*Independent Sch. Dist. #52 v. Hofmeister*,
   473 P.3d 475 (Okla. 2020) . . . . . . . 10

*Jordan v. Sosa*,
    654 F.3d 1012 (10th Cir. 2011)    .    .    .    .    .    .    4

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971) .    .    .    .    .    .    .    .    18

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .    .    .    .    .    .    .    .    3, 4

*Monument Builders of Greater Kansas City v. American Cemetery Ass'n*,
    891 F.2d 1473 (10th Cir. 1989)    .    .    .    .    .    .    11

*PeTA v. Rasmussen*,
    298 F.3d 1198 (10th Cir. 2002)    .    .    .    .    .    .    4

*Powell Briscoe, Inc. v. Peters*,
    269 P.2d 787 (Okla. 1954)  .    .    .    .    .    .    .    10

*Profiles, Inc. v. Bank of America Corp.*,
    453 F.Supp.3d 742 (D.MD 2020) .    .    .    .    .    15, 16, 17

*Ridge at Red Hawk, L.L.C. v. Schneider*,
    493 F.3d 1174 (10th Cir. 2007)    .    .    .    .    .    .    12

*Safe Streets Alliance v. Hickenlooper*,
    859 F.3d 865 (10th Cir. 2017)    .    .    .    .    .    . 5, 10, 13

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009) .    .    .    .    .    .    .    .    4

*Turner v. McGee*,
    681 F.3d 1215 (10th Cir. 2012)    .    .    .    .    .    . 4

**Constitutional and Statutory Provisions and Rules**

U.S. Const. amend. I    .    .    .    .    .    .    .    .    18

42 U.S.C. § 801    .    .    .    .    .    .    .    . 5, 7, 14, 15

Fed. R. Civ. P. 12    .    .    .    .    .    .    .    . 3, 11

Fed. R. Civ. P. 65    .    .    .    .    .    .    .    . 3

iv

**Other Authorities**

11A C. Wright, A. Miller & M. Kane, Federal Practice
    & Procedure § 2949, at 212 (2nd ed. 1995)     .     .     .     .     3

Department of the Treasury, *Coronavirus Relief Fund Guidance for*
    *State, Territorial, Local and Tribal Governments*
    (Updated Sept. 2, 2020), *available at* https://home.treasury.gov/policy-
    issues/cares/state-and-local-governemnts (last visited Nov. 12, 2020)     .     7

Department of the Treasury, *Coronavirus Relief Fund Frequently*
    *Asked Questions* (Updated Oct. 19, 2020), available at
    https://home.treasury.gov/policy-issues/cares/state-and-local-goverments
    (last visited Nov. 12, 2020).    .     .     .     .     .     .     .     7, 8

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

THE GREEN ROOM SOUL FOOD )
STEAKHOUSE, LLC, et al., )
                       )
       Plaintiffs, )
                       )
vs. )      Case No.      CIV-20-1130-J
                       )
BRIAN MAUGHAN, in his Official )
Capacity as District 2 County )
Commissioner, et al., )
                       )
       Defendants. )

## MOTION TO DISMISS PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF BY DEFENDANT BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY AND DEFENDANTS BRIAN MAUGHAN AND KEVIN CALVEY, EACH IN HIS OFFICIAL CAPACITY AS COUNTY COMMISSIONER

## INTRODUCTION

Plaintiffs have garnered much media attention for their protests that have attempted to impede public bodies in Oklahoma County in the performance of their governmental functions for months. Not content with the spotlight that has already been given to their cause, Plaintiffs now bring their obstructionist agenda to the courts in hopes that they may stop the performance of discretionary, political functions in ways that their protests could not. They do so with a smattering of factual assertions that amount to unrelated nonsense and no genuine legal claim – after all, they evoke vague notions of fundamental rights protected by the Establishment Clause without a church in sight. Reduced to its core, Plaintiffs' Petition presents nothing more than non-Hofeldian cries of

displeasure with the County's discretionary political decisions regarding Coronavirus Relief Funds for which the law gives no power to the courts to interfere.

## ARGUMENT AND AUTHORITY

Plaintiffs filed suit in state court seeking a court determination declaring that Oklahoma County, through its Commissioners and Board of County Commissioners, violated the laws of the United States in dispersing to Defendant Authority funds allocated to the County pursuant to the Coronavirus Relief Fund, created by Section 801 of Title 42 of the United States Code, and to further enjoin the spending determinations. Plaintiffs further suggest that the spending determinations of the County violate their fundamental constitutional rights under the Establishment Clause or some other unspecified provision of the Constitution.  Based upon the federal questions presented, Defendants removed the matter to this Court.

Defendant Board of County Commissioners of Oklahoma County and Defendants Brian Maughan and Kevin Calvey, each in his official capacity as County Commissioner of Oklahoma County, denies that Plaintiffs are entitled to any relief.  Specifically, Defendants submit that Plaintiffs' Petition presents only non-justiciable political questions for which they neither have standing to challenge nor a concrete and competing interest to assert.  Absent a justiciable case or controversy, this Court lacks jurisdiction to grant declaratory or injunctive relief.  Even apart from these jurisdictional considerations, Plaintiffs' Petition is subject to dismissal for failure to state a claim upon which relief may be granted, as the allegations of their Petition fall drastically short of establishing the existence of any federal statutory or constitutional right to be vindicated.  As such,

Defendants are entitled to dismissal of Plaintiffs' Petition pursuant to Rule 12 of the Federal Rules of Civil Procedure.[1]

## I.  PLAINTIFFS' REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF PRESENTS A NON-JUSTICIABLE POLITICAL QUESTION FOR WHICH THERE IS NO ACTUAL CONTROVERSY OR STANDING.

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a claim for relief on the grounds that the court lacks jurisdiction.  Fed.R.Civ.P. 12(b)(1).  Pursuant to Article III of the Constitution, a federal court has jurisdiction to hear "cases" and "controversies."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).  Embodied in the words "cases" and "controversies" are various elements of justiciability; these elements include the requirements that a plaintiff have standing, that there exist an actual conflict of competing interests, and that there is no adjudication of mere political questions.  *Flast v. Cohen*, 392 U.S. 83, 94-95 (1968).  Here, Plaintiffs not only lack standing to seek relief but the issues presented by them are nothing more than political questions for which there are no actual competing interests that a favorable decision of the court will redress.  As such, Plaintiffs' request for declaratory and/or injunctive relief must be dismissed for want of jurisdiction.

---

[1] Plaintiffs' Petition states that they also seek a temporary restraining order and/or preliminary injunction.  DOC 1-2, Petition, p. 13 ¶ 4.  Of course, a request for such relief is properly made by motion pursuant to Rule 65.  Fed.R.Civ.P. 65(a)(2); 11A C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2949, at 212 (2nd ed. 1995).  As no such motion has been filed at this time, Defendants reserve the right to respond to Plaintiffs' request for such relief at such time a motion seeking the same has been filed.

A.   **PLAINTIFFS LACK STANDING TO ASSERT ENTITLEMENT TO ANY CLAIM FOR RELIEF AND, THUS, THE PETITION MUST BE DISMISSED FOR LACK OF JURISDICTION.**

An essential element of jurisdiction to resolve a case or controversy is that of standing.  *Lujan*, 504 U.S. at 559-60; *see also PeTA v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002) (stating "standing is a jurisdictional issue").  To have standing, there must be (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury is redressable by a favorable decision. *Id.* at 560-61; *see also Turner v. McGee*, 681 F.3d 1215, 1218 (10th Cir. 2012).

"The injury-in-fact element requires an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011).  "This requirement assures that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party.  Where that need does not exist, allowing courts to oversee legislative or executive action would significantly alter the allocation of power away from a democratic form of government."  *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009)(internal citations and quotations omitted).

While a taxpayer may have standing to challenge the collection of a specific tax as being unlawful, the same is not true with regard to challenges to spending.  *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 599 (2007).  In those instances, the taxpayer's interest is too generalized and attenuated to establish an injury-in-fact.  *Id.* Nor does the court have the power to "entertain citizen suits to vindicate the public's

nonconcrete interest in the proper administration of the laws." *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 904 (10th Cir. 2017).

In the matter *sub judice*, Plaintiffs are a number of citizens and a limited liability company that seek declaratory and injunctive relief challenging the decision to disperse a portion of the funds received by the County under the Coronavirus Relief Fund, 42 U.S.C. § 801, to Defendant Authority.  As citizens, the individual Plaintiffs aver they have standing because their status as taxpayers gives them "an interest in seeing the laws of Oklahoma and the United States interpreted and applied appropriately."  DOC 1-2, Petition, ¶ 2-4.  They also make vague reference to their ability to challenge the use of expenditure of funds that violates the Establishment Clause.  DOC 1-2 Petition, ¶ 28.  Plaintiff limited liability company is alleged to have been forced to cease operations as a result of the COVID-19 pandemic.  Plaintiff Company bases its standing on the purely speculative notion that had the County opted to spend relief funds in another manner, it or its owner might have been in a position to receive funds from the County.  DOC 1-2, Petition, ¶ 1-2.

Nothing in Plaintiffs' Petition pleads the existence of an injury-in-fact as is required for them to have standing to seek declaratory or injunctive relief.  At best, Plaintiffs' claims of injury are purely hypothetical in that they might possibility benefit if the County used its allocation of Coronavirus Relief Funds in a different manner.  While they suggest they may also have some sort of Establishment Clause or other constitutional claim, their Petition fails to develop the basis for their claims or any injury-

in-fact they might have suffered or will suffer.  Because Plaintiffs cannot establish their

standing to seek relief, this Court lacks jurisdiction to grant the same.

**B.    ANY QUESTION OF THE LAWFULNESS OF THE EXPENDITURE OF FEDERAL CORONAVIRUS RELIEF FUNDS PRESENTS A POLITICAL QUESTION EXPRESSLY DELEGATED TO THE EXECUTIVE BRANCH.**

Of course, Plaintiffs' inability to establish standing to seek judicial relief, without

more, warrants wholesale dismissal of their Petition for lack of jurisdiction.

Nevertheless, dismissal is also warranted because the question of the legitimacy of the

expenditure of funds allotted to the County by the Coronavirus Relief Fund Act is

expressly reserved for the Executive Branch which is not only charged with developing

standards for the manner in which such funds may be expended but enforcing those

standards in the first instance as well.  As such, Plaintiffs' request for equitable relief in

this respect presents a political question for which the Separation of Powers of the

Constitution forbids judicial interference.

The Supreme Court has recognized that, "[t]he nonjusticiability of a political

question is primarily a function of the separation of powers."  *Baker v. Carr*, 369 U.S.

186, 210 (1962).   In *Baker v. Carr*, 369 U.S. 186 (1962), the Court succinctly

summarized those instances in which a case presents a political question to include one or

more of the following:

> a textually demonstrable constitutional commitment of the issue to a
> coordinate political department; or a lack of judicially discoverable and
> manageable standards for resolving it; or the impossibility of deciding
> without an initial policy determination of a kind clearly for nonjudicial
> discretion; or the impossibility of a court's undertaking independent
> resolution without expressing lack of respect due coordinate branches of
> government; or an unusual need for unquestioning adherence to a political

decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id*. at 217.

In the present case, Plaintiffs challenge the County's ability to allocate and Defendant Authority's ability to receive funds given the County from the Coronavirus Relief Fund. As part of the CARES Act, Congress created the Coronavirus Relief Fund. 42 U.S.C. § 801. Based upon its population, the Act provided federal aid directly to Oklahoma County and expressly limited the use of such funds to cover the costs of the County that are incurred in response to the public health emergency, were not accounted for in the most recent budget of the County, and were incurred during a specified time period. 42 U.S.C. § 801(b), (d). In addition, the Act directs that the Inspector General of the Department of the Treasury shall conduct monitoring and oversight of the use of funds and, where he determines that there has been an improper expenditure, he is charged to recoup the funds. 42 U.S.C. § 801(f). To this end, the Department of the Treasury has issued direction in the use of Coronavirus Relief Funds through generalized answers to frequently asked questions and guidance publications. Department of the Treasury, *Coronavirus Relief Fund Guidance for State, Territorial, Local and Tribal Governments* (Updated Sept. 2, 2020), *available at* https://home.treasury.gov/policy-issues/cares/state-and-local-governemnts (last visited Nov. 12, 2020); Department of the Treasury, *Coronavirus Relief Fund Frequently Asked Questions* (Updated Oct. 19, 2020), available at https://home.treasury.gov/policy-issues/cares/state-and-local-goverments

(last visited Nov. 12, 2020).   However, administrative regulations have not yet been adopted.

Here, Plaintiffs seek to challenge the County's determination to provide a portion of its Coronavirus Relief Funds to Defendant Authority – the entity charged with operating the Oklahoma County Detention Center for the benefit of the County.   Not only does this involve an initial discretionary determination of the sort left to others than the courts, but, absent the adoption of federal regulations, there are no manageable standards this Court might apply to resolve Plaintiffs' contention that this decision violated federal law.   It is the very lack of binding administrative regulations that also creates the potential for any pronouncement of this Court to conflict with Executive Branch determinations that have yet to be made.   All of these considerations demonstrate that Plaintiffs' request for relief presents a non-justiciable political question for which this Court should find an absence of jurisdiction to decide.

## C.   NO ACTUAL CONTROVERSY EXISTS BETWEEN COMPETING INTERESTS AS IS NECESSARY FOR A JUSTICIABLE CLAIM.

Finally, Plaintiffs' request for relief is non-justiciable for lack of an actual controversy between competing interests.   As aptly stated by the Tenth Circuit,

> Article III has long been interpreted as forbidding federal courts from rendering advisory opinions.   To be sure, an advisory opinion may sometimes be valuable.   Often two persons (or many more) disagree about what the law requires and one, or both, would be willing to incur the expense of having the courts resolve the matter.   But more is required before one can invoke the authority of courts created by Article III.   It is not the role of federal courts to resolve abstract issues of law.   Rather, they are to review disputes out of specific facts when the resolution of the dispute will have practical consequences to the conduct of the parties.

*Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011).

Many courts have attempted to define "controversy" for purposes of addressing the question of justiciability, perhaps none better than the Supreme Court which long ago stated: "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.  It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).

The Petition now under consideration presents no real or substantial antagonistic controversy between the Plaintiffs and the named Defendants.  Plaintiffs identify no concrete and personal legal right affected by Defendants' actions for which any decision of this Court might conclusively redress.  Instead, Plaintiffs' claims present nothing more than citizen complaints regarding the discretionary decisions of their elected officials; the remedy for such complaints, however, is through the election process.  Absent an actual controversy between competing legal interests, the case presents no justiciable question.  Plaintiffs' Petition must, therefore, be dismissed.

## II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR THE VIOLATION OF ANY FEDERAL STATUTORY OR CONSTITUTIONAL RIGHT AND, THUS, DEFENDANTS ARE ENTITLED TO DISMISSAL OF THE PETITION PURSUANT TO RULE 12(B)(6).

As discussed in the preceding sections, Defendants submit that Plaintiffs' Petition should be dismissed for lack of jurisdiction, as it presents only non-justiciable political questions for which they neither have standing to challenge nor for which there exists an

9

actual controversy of competing interests.   Without waiving these jurisdictional arguments and in the alternative, Defendants submit that Plaintiffs' Petition is subject to dismissal for failure to state a claim upon which relief may be granted.

In the case at bar, Plaintiffs filed their Petition seeking both declaratory and injunctive relief.  Of course, each of these are merely forms of relief that may be granted not independent causes of action in their own right.   After all, the question of what remedies are available is analytically distinct from whether there is a right or cause of action in the first instance. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 902 (10th Cir. 2017).  This principle does not change where, as here, Plaintiffs seek equitable relief rather than monetary damages – a point that appears to escape Plaintiffs as evidenced by the rambling and disjointed factual allegations contained in the Petition as well as their declaratory requests that bear upon no discernable personal rights or cause of action of their own.   DOC 1-2, Petition ¶ 12-14, 16-18, 20-24, 30, 31.   Stated another way, to invoke the equitable powers of a court, the plaintiff must have a federal or state law right he or she possesses against the defendant. *Id.*; *Independent Sch. Dist. #52 v. Hofmeister*, 473 P.3d 475, 506 (Okla. 2020)(noting that a party must have an injury to a cognizable legal interest as a necessary element to obtaining equitable relief under state law); *Barrios v. Haskell Cnty. Pub. Fac. Auth.*, 432 P.3d 233, 242-43 (Okla. 2018)(stating that "any alleged federal or state right must be adjudicated within the remedial framework of a legally cognizable action"); *Powell Briscoe, Inc. v. Peters*, 269 P.2d 787, 791 (Okla. 1954)(stating, "An injunction will not issue to protect a right not in esse and which may never arise, or to restrain an act which does not give rise to a cause of action.").

Naturally, these rights may be created by the state common law, state or federal statutory law, or state or federal constitutional law.

Though far from a hallmark of clarity and cogency, Plaintiffs appear to assert personal rights under the CARES Act and, more particularly, the Coronavirus Relief Fund Act.  DOC 1-2, Petition ¶ 1, 2, 25, 28.  Plaintiffs also suggest the existence of rights under the Establishment Clause of the First Amendment to the United States Constitution.[2]  DOC 1-2, Petition ¶ 28.  Finally, Plaintiffs make vague reference to "fundamental rights" of which they have been deprived arbitrarily and unlawfully, yet they do not specify which fundamental rights they claim to have been violated.  DOC 1-2, Petition ¶ 33.  However, Plaintiffs' Petition is woefully inadequate to state plausible claims in these regards.

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a claim for relief on the grounds that the plaintiff has failed to state a claim upon which relief may be granted.  Fed.R.Civ.P. 12(b)(6).  A motion to dismiss may be granted if, "viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain enough facts to state a claim to relief that is plausible on its face."  *Anderson v. Suiters*, 499 F.3d 1228,

---

[2] Defendants presume that Plaintiffs intend to assert a federal constitutional claim based upon their citation to *Flast v. Cohen*, 392 U.S. 83 (1968), as the Court in *Flast* addressed a claim by taxpayers that the use of federal funds to purchase instructional materials for parochial schools violated the First Amendment to the United States Constitution.  *Flast v. Cohen*, 392 U.S. 83, 85 (1968).  However, the very fact that such an assumption must be made as to the precise nature of Plaintiffs' claims is evidence that their Petition does not meet the basic due process requirement of Rule 8 of giving Defendants fair notice of the claims brought against them.  *Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n*, 891 F.2d 1473, 1480 (10th Cir. 1989).

1232 (10th Cir. 2007)(quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009).  "Factual allegations

must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S.

at 555.  Stated another way: "the mere metaphysical possibility that some plaintiff could

prove some set of facts in support of the pleaded claims is insufficient; the complaint

must give the court reason to believe that this plaintiff has a reasonable likelihood of

mustering factual support for these claims."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493

F.3d 1174, 1177 (10th Cir. 2007).

Applying these principles to Plaintiffs' Petition, the same must be dismissed for

failure to state a claim upon which relief can be granted.  Specifically, Plaintiffs fail to

establish the existence of any personal right, much less a personal right of action, created

under the CARES Act or, more particularly, the Coronavirus Relief Fund Act.  While the

Establishment Clause does create individual rights, Plaintiffs' Petition fails to state a

plausible claim that there has been any violation of the First Amendment or any other

unspecified fundamental right.  Having failed to adequately plead the existence of any

violation of their rights under federal statutory or constitutional law, Plaintiffs are not

entitled to declaratory or injunctive relief.

A.   **THE CORONAVIRUS RELIEF FUND ACT DOES NOT CREATE A PRIVATE RIGHT SUCH THAT PLAINTIFFS MAY BRING AN ACTION TO ENFORCE ITS PROVISIONS.**

In their primary theory of recovery, Plaintiffs aver they have personal rights created by the CARES Act and, more specifically, the Coronavirus Relief Fund Act.  It is well established that the elements of a federal cause of action are defined by federal law as created by Congress.  *Hickenlooper*, 859 F.3d at 901.  Thus, Congress must have given the plaintiff a federal right of his or her own to vindicate under a particular federal statute.  *Id*. at 901-02.  Here, unless the CARES Act or the Coronavirus Relief Fund Act gives to Plaintiffs their own personal rights to vindicate, they cannot maintain a suit in law or in equity against any Defendant for a violation thereof.  *Id*.  As such, this Court "must interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."  *Id*. at 902.

The search for congressional intent begins with the text of the federal statute at issue.  *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001).  For a federal statute to create a private right, its text must be phrased in terms of the persons to be benefited therefrom.  *Hickenlooper*, 859 F.3d at 903.  Concomitantly, statutes that focus on the regulation of persons or entities, rather than focusing on individuals to be protected, do not evince an intent to confer rights on a particular class of persons.  *Sandoval*, 532 U.S. at 289; *Hickenlooper*, 859 F.3d at 903.  Where a statute is phrased as a directive to federal agencies engaged in the distribution of public funds, there is far less reason to infer the existence of a private right or remedy.  *Sandoval*, 532 U.S. at 289.  In addition, Congress may implicitly foreclose a private right or remedy by providing an enforcement scheme

13

that is incompatible with individual enforcement. *Blessing v. Freestone*, 520 U.S. 329, 330 (1997). Ultimately, however, if Congress is silent or ambiguous in the creation of a private right of action, a court may not find one to exist. *Sandoval*, 532 U.S. at 286-87.

Turning to the case at bar, the text of the Coronavirus Relief Fund Act makes it clear that Congress created no private right or remedy that Plaintiffs may enforce. As part of the CARES Act, pursuant to Section 801 of Title 42 of the United States Code, Congress created the Coronavirus Relief Fund. 42 U.S.C. § 801(a). From monies appropriated thereto, Congress directed the Secretary of the Treasury to disperse funds to states, territories, tribal governments, and local governments – to include counties in accordance with certain population requirements. 42 U.S.C. § 801(b), (c). Based upon its population, the Act provided for Oklahoma County to receive an allotment of funds directly from the Secretary of the Treasury. 42 U.S.C. § 801(b), (c).

In addition to directing the Secretary of the Treasury to disperse federal aid funds, Congress expressly limited the manner in which the funds could be used by governmental recipients. In relevant part, the Act states:

> A State, Tribal Government, and unit of local government *shall* use the funds provided under a payment made under this section *to cover only those costs of the* State, Tribal Government, or *unit of local government* that (1) are necessary expenditures incurred due to the public health emergency with respect to the Coronavirus Disease 2019 (COVID-19); (2) were not accounted for in the budget most recently approved as of March 27, 2020, for the State or government; and (3) were incurred during the period that begins on March 1, 2020, and ends on December 30, 2020.

42 U.S.C. § 801(d)(emphasis added). As evinced by the plain language of the Act, the funds disbursed to Oklahoma County were expressly limited to cover the costs of the

County that are incurred in response to the COVID-19 pandemic.  No where in the Act does Congress create a right to any particular individual, private business, or non-governmental entity to receive funds from the Coronavirus Relief Fund.  Instead, it operates purely to regulate the use of federal aid by state and local governmental entities. For this reason alone, the Act cannot be construed as creating a private right that may be enforced by Plaintiffs.

What's more, the text of the Coronavirus Relief Fund Act creates an enforcement mechanism that is wholly inconsistent with private enforcement.  There, Congress expressly directs that the Inspector General of the Department of the Treasury shall conduct monitoring and oversight of the use of funds and, where he determines that there has been an improper expenditure, he is charged to recoup the funds.  42 U.S.C. § 801(f). This point is key.  As recognized by the United States Supreme Court, "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290.

Defendants have found no authority – persuasive or otherwise – directly addressing the question of the existence of a private right created by the Coronavirus Relief Fund Act, undoubtedly due to the recent enactment of the statute in the first instance.  However, at least one other federal district court has addressed a similar issue with another portion of the CARES Act.

In *Profiles, Inc. v. Bank of America Corp.*, 453 F.Supp.3d 742 (D.MD 2020), the plaintiff was a small business affected by the COVID-19 pandemic that wished to take advantage of changes to the Small Business Act effectuated by the CARES Act.  *Profiles,*

15

*Inc. v. Bank of America Corp*., 453 F.Supp.3d 742, 745 (D.MD 2020).  In particular, the amendments made pursuant to the CARES Act authorized the Small Business Administration to modify existing loan programs or establish new programs that would allow participating lenders to make loans to certain small businesses adversely affected by the pandemic to cover payroll and other expenses – a program referred to as the Payroll Protection Program.  *Id.* at 745, 747.

The defendant, Bank of America, was a participating lender of the Payroll Protection Program.   *Id*. at 745.   As a participating lender, the defendant placed restrictions upon applicants seeking Payroll Protection Program that limited loans to those business with whom the defendant had a preexisting borrowing relationship.   *Id*. Later, the defendant expanded its restrictions to include those businesses that had a depository relationship with the bank.   *Id*. at 745-46.   Neither of these restrictions, however, were made requirements of the CARES Act or agency regulations made pursuant thereto.  *Id*. at 747-48.

Plaintiff filed suit in federal court on behalf of itself and a putative class of small business who were denied small business loans based upon the defendant's policy restrictions.   *Id*. at 745.   In so doing, the plaintiff sough injunctive relief to prohibit defendant from enforcing its policy restrictions claiming that the same interfered with their federal statutory right to apply for a loan under the Payroll Protection Program.  *Id*. at 747.

In addressing the plaintiff's claim for relief, the court first considered the threshold inquiry of whether the CARES Act created a private right of action in the first instance.

16

*Id*. at 748.   Applying the principles announced in *Blessing, Sandoval,* and others, the court concluded that the Act did not create a private right of action.   *Id*. at 748-52.   In so doing, the court stated:

> The Court is not persuaded that the language of the CARES Act evidences the requisite congressional intent to create a private right of action.   Indeed, an expansive approach to implied rights of action cannot be squared with the doctrine of the separation of powers.   Even assuming that the CARES Act grants PPP loan applicants with some statutory right to apply through a particular lender of choice (which is, itself, dubious), nothing in its text evinces Congress's intent to enable PPP loan applicants to bring civil suits against PPP lenders, to enforce that right.   The plain language of the statute does not suggest an intent to confer the particular right alleged, nor a private remedy against participating SBA lenders.

*Id*. at 751-52 (internal citations and quotations omitted).

Based upon the text of the Coronavirus Relief Fund Act and the persuasive authority of *Profiles*, it is clear that Plaintiffs have no private right to enforce the provisions of the Coronavirus Relief Fund Act.   As such, it must follow that they have no basis upon which the challenge the County's decision to transfer any portion of the federal funds to Defendant Authority, no basis upon which to challenge the lawfulness of Defendant Authority's ability to accept such funds, and no basis seek any alternative disbursement of such funds.   Accordingly, Plaintiffs' claim for declaratory and injunctive relief predicated on any alleged violation of the Coronavirus Relief Fund Act must be dismissed for failure to state a claim upon which relief may be granted.

## B.   PLAINTIFFS FAIL TO ARTICULATE ANY PLAUSIBLE CLAIM FOR A VIOLATION OF THE ESTABLISHMENT CLAUSE.

While Plaintiffs' claim predicated upon the CARES Act is no model of lucidity, their apparent claim rooted in the Establishment Clause presents a complete mystery.   Of

17

course, the First Amendment to the United States Constitution, *inter alia*, provides that

"Congress shall make no law respecting an establishment of religion…." U.S. Const.

amend. I. At its core, "[t]he Establishment Clause enshrines the principle that

government may not act in ways that aid one religion, aid all religions, or prefer one

religion over another." *American Atheists, Inc. v. Davenport*, 637 F.3d 1095, 1116 (10th

Cir. 2010). Through the Fourteenth Amendment, this limitation applies to the States and

its political subdivisions. *Id.*

The Tenth Circuit has recognized that the appropriate standard to be applied in

evaluating an Establishment Clause claim has been subject to much debate. *Id*.

However, the Court has followed the tripartite test of the *Lemon v. Kurtzman*, 403 U.S.

602 (1971) in evaluating such claims in this jurisdiction. *Id*. at 1117. As succinctly

stated by the Tenth Circuit,

> The Court in *Lemon* established three general tests to determine whether a
> state has violated the principles protected by the Establishment Clause:
> First, the statute must have a secular legislative purpose; second, its
> principal or primary effect must be one that neither advances nor inhibits
> religion; finally, the statute must not foster an excessive government
> entanglement with religion. If any of these tests are violated, the state
> practice will be deemed unconstitutional.

*Id*. (internal citations and quotations omitted).

Extensive discussion of the *Lemon* tests is unnecessary in the present case. Apart

from a singular sentence declaring that they have "standing to sue when the government

uses its revenue to violate the Establishment Clause because the government has

exceeded its constitutional limitations on taxing and spending," Plaintiffs' Petition is

utterly devoid of any well-pled facts that might plausibly suggest that their rights under

18

the First Amendment have been violated.  DOC 1-2, Petition, ¶ 28.  In fact, Plaintiffs make no allegation that religion has played any role whatsoever in the County's decisions regarding the expenditure of funds provided through the Coronavirus Relief Fund. Because Plaintiffs make no effort to plead facts tending to plausibly establish a violation of their First Amendment rights, any request for declaratory or injunctive relief predicated thereon must be dismissed for failure to state a claim upon which relief may be granted.

**C.     PLAINTIFFS FAIL TO IDENTIFY, MUCH LESS PLEAD A PLAUSIBLE VIOLATION OF, ANY OTHER FUNDAMENTAL RIGHTS UPON WHICH THEIR PETITION FOR RELIEF IS PREDICATED.**

With any good mystery novel, each chapter raises new surprises keeping its reader on the edge of suspense.  So too does Plaintiffs' Petition.  There, Plaintiffs assert that Defendants have arbitrarily, unreasonably, and unlawfully deprived them of their "fundamental rights."  DOC 1-2, Petition ¶ 33.  Unlike a good book, however, Plaintiffs leave us all to speculate to what fundamental rights they refer – a plot hole that deprives the reader of closure.  Perhaps the statement relates to their CARES ACT claim.  Perhaps it relates to an Establishment Clause claim.  Perhaps it relates to some other unspecified right.  While the mystery may forever go unsolved, what is certain is that to the extent Plaintiffs intend to assert any other legal basis for their challenges to the discretionary spending determinations of the County, the same cannot satisfy the rigorous *Twombly* standard, as it is devoid of any well pled facts that would tend to raise their right to relief above a speculative level.  *Twombly*, 550 U.S. at 555.  There being no identified nor

plausible basis for relief, any claim presented must be dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

WHEREFORE, the Defendant Board of County Commissioners of Oklahoma County and Defendants Brian Maughan and Kevin Calvey, each in his official capacity as County Commissioner of Oklahoma County, respectfully pray that this Honorable Court grant Defendants' Motion to Dismiss in all respects.

Respectfully submitted,

BY: __s/ Aaron Etherington_____
AARON ETHERINGTON, OBA #18,259
ASSISTANT DISTRICT ATTORNEY
320 Robert S. Kerr, Suite 500
Oklahoma City, OK 73102
Phone: (405) 713-1600
Fax: (405) 713-1749
aaron.etherington@oklahomacounty.org

## CERTIFICATE OF SERVICE

   This is to certify that a true and correct copy of the above and foregoing document was served on the following person, who is a registered participant of the ECF case filing system:

Robert Gifford II
Gifford Law, PLLC
PO Box 2682
Oklahoma City, OK 73101
Robert.Gifford@GiffordLawyer.com

*Attorney for Plaintiffs*

Robert McCampbell
Gable Gotwals
211 N. Robinson, 15th Floor
Oklahoma City, OK 73102
rmccampbell@gablelaw.com

*Attorneys for Defendants*
*Oklahoma County Criminal Justice Authority,*
*Tricia Everest, and Greg Williams*

       s/ Aaron Etherington