IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **THE GREEN ROOM SOUL FOOD STEAKHOUSE, LLC;** *et al.* | |
| **Plaintiffs,** | |
| v. | Case No. CV-20-1130-J |
| **OKLAHOMA COUNTY BOARD OF COMMISSIONERS,** | |
| **Defendants.** | **HEARING REQUESTED** |

### NOTICE OF POSSIBLE CONFLICT OF INTEREST BY THE OKLAHOMA COUNTY DISTRICT ATTORNEY'S OFFICE IN ITS REPRESENTATION OF COMMISSIONER KEVIN CALVEY, CHAIR OF THE BOARD OF COUNTY COMMISSIONERS

**COMES NOW,** the Plaintiffs **THE GREEN ROOM SOUL FOOD STEAKHOUSE, LLC;** *et al.*, respectfully submits this Notice of Possible Conflict by the Defendants' counsel, the Oklahoma County District Attorney's Office, for the Court's consideration. This conflict of interest of the District Attorney has been raised by the Chair of the **BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF OKLAHOMA** in a recent Oklahoma County state filing. *See* Attachment 1. (As the Rules of Professional Conduct mandate, a lawyer may not act contrary to his or her client. See Rule 1.2, 1.7).

1

## SUMMARY

The Oklahoma County District Attorney's Office is currently representing the **BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF OKLAHOMA ("BOCC")** and is currently in litigation against the **BOCC's** Chair **KEVIN CALVEY** arising from the use of CARES Act funds and the Jail Trust.  In light of ongoing litigation by the Oklahoma County District Attorney's Office <u>opposing</u> Defendants' leader **KEVIN CALVEY**, their publicized and official public filings in the state district court matter opposing their own "client" **CALVEY's** questionable actions in the handling of CARES Act funds (which are at the heart of this litigation).  Further, in light of recent revelations, there is the likely possibility that the Oklahoma County District Attorney's Office is (or has) conducted a criminal investigation (formal/informal or official/unofficial) into the **BOCC's** Chair **CALVEY** calls for this Court to hold a hearing on whether the Oklahoma County District Attorney's Office has a conflict of interest in representing Defendants' primary leader in **CALVEY**.[1]

---

[1] It is known the Oklahoma County District Attorney David Prater uses the Multi-County Grand Jury to conduct personal and private investigations that are kept solely within his personal office and conducted by his own investigator without knowledge of the Attorney General of Oklahoma.  *See* Debra Cassens Weiss, *Investigator claims DA wrongly ordered probe of criminal justice reformers*, <u>American Bar Association Journal</u> available at

The Court should hold a hearing to ensure that the Defendants' (**CALVEY** as the "Chair" of the **BOCC**) legal interests are not compromised and the Oklahoma County District Attorney's Office does not have a conflict of interest with its current litigation against **CALVEY** and is not conducting (or directing) a formal or informal (official/unofficial) criminal investigation into Commissioner **KEVIN CALVEY**.  The **BOCC**/Commissioner **CALVEY** can request the County to seek outside, independent counsel or representation through the Oklahoma Attorney General or another District Attorney's Office. Commissioner **CALVEY**, as a license attorney and a proposed beneficiary of CARES Act funds at $450.00 per hour,[2] may wish to represent himself as he has at the state district court level.  This suggestion is not unusual as it is the current and ongoing process in a matter of *United States v. Mayes, et al*, CR-20-240-F before the Honorable Stephen P. Friot.  *See* Docs. 50, 51, 54, 55, 64, and 65.

---

https://www.abajournal.com/news/article/investigator-claims-da-wrongly-ordered-probe-of-criminal-justice-reformers (last visited 25 NOV 2020).
[2] Brett Dickerson, *Calvey could become county manager in CARES consulting firm contract* (available at https://freepressokc.com/calvey-could-county-manager-cares-act-consulting-firm-contract/ (last visited 18 NOV 2020) (an Iowa firm RSM US LLP would act as "consultants" on use of CARES Act funds with County Commissioner **CALVEY** as a "senior member of management" to assist and to be paid "on an hourly basis ranging from $450 per billable hour for "Partner or Principal" all the way down to $150 per hour for an "Associate."

## **INTRODUCTION**

The Plaintiffs do hereby advise the Court regarding a possible conflict to preserve the integrity of the proceeding. The Oklahoma Rules of Professional Conduct ("Oklahoma Rules") apply here because this Court sits in Oklahoma and has adopted the Oklahoma Rules of Professional Conduct ("Oklahoma Rules"). *See* W.D. Okla. L.CvR. 83.6(b); Oklahoma Rule 8.5. The Plaintiffs believes this possible conflict of interest implicates Oklahoma Rules of Professional Conduct 1.1, 1.2, 1.3, 1.6, 1.7, 1.8, and 1.10.

If necessary, the Plaintiffs request the Court to resolve the possible conflict of interest on the record between that of the Defendants' "law firm" and the primary leader/spokesman (and a licensed attorney) of the Defendants (Commissioner Calvey). *United States v. Migliaccio*, 34 F.3d 1517, 1528 (10th Cir. 1994) ("[W]hen [a party] is aware of a conflict of interest, it has a duty to bring it to the court's attention and, if warranted, move for disqualification."); *United States v. McKeighan*, 685 F.3d 956, 966 (10th Cir. 2012).

A party is routinely encouraged to advise the court of any conflicts at the earliest stage of the proceedings and as circumstances warrant. *United States v. Malpiedi*, 62 F.3d 465, 470 (2nd Cir. 1995); *Mannhalt v. Reed*, 847 F.2d 576, 583-584 (9th Cir. 1994); *see also United States v. Morelli*, 169 F.3d 798, 812 (3rd Cir. 1999). The Plaintiffs bring this matter to the Court's attention,

consistent with its duties of competence and diligence under Oklahoma Rules 1.1 and 1.3, to preserve the integrity of the proceedings and to prevent appeals or collateral attacks on any findings and orders.  Conflicts of interest implicate due process rights and present the potential argument that a party was denied a fair hearing because of their assigned counsel's conflict of interest.  Under the former Code of Professional Responsibility, Canon 9 of the Disciplinary Rules provided, "A lawyer should avoid even the appearance of impropriety."

## DISCUSSION

1. The Oklahoma County District Attorney's Office has entered its appearance on behalf of the **BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF OKLAHOMA (BOCC)**. [Docs. 10, 15, 16].

2. Defendants' **CALVEY** also serves as the "Chair" of the **BOCC**, created the "Jail Trust," voted himself as a member of the Jail Trust (that was to receive the entirety of the $47 million in CARE Act funds), sought state legislation to compel the residents of Oklahoma County to be responsible for any legal judgments against the Trust, and has been the proponent to move all CARE Act funds ($47 million) to the Jail Trust. **CALVEY** was also the sole vote to oppose residents and small business

owners affected by the COVID pandemic to have access to CARES Act funds.

3. On October 6 2020, Defendants' **CALVEY** "sued" himself from his official capacity as an Oklahoma County Commissioner against his official capacity as a member of the Jail Trust. *See* Attachment 2.

   a. On October 14, 2020, the Oklahoma County District Attorney's Office filed to intervene.[3]

   b. On November 2, 2020, both the Oklahoma County District Attorney's Office and the Jail Trust (which **CALVEY** is a member of as well) filed a motion to dismiss opposing the Defendants' **CALVEY**.

   c. On November 18, 2020, it was revealed that while Defendants' Commissioner CALVEY was serving as the Chair of the **BOCC** and a member of the "Jail Trust," he was also pushing to personally

---

[3] The Court may take judicial notice of various state court records. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (court may exercise "discretion to take judicial notice of publicly-filed records in [this] court and certain other courts concerning matters that bear directly upon the disposition of the case at hand"). Available online at the *Oklahoma Supreme Court Network*, https://www.oscn.net/dockets/GetCaseInformation.aspx?db=oklahoma&number=cv-2020-2065 (last visited on 26 NOV 2020).

     gain as a consultant on use of CARE funds at a rate of $450.00 an hour.[4]

4. The Oklahoma County District Attorney's Office has previously opened up investigations into Defendants' County Commissioner Brian Maughn,[5] "as well as numerous other elected officials that were notified of Oklahoma County District Attorney's "investigations," but were never prosecuted. Based on good faith belief of that Office's past practices and statements of former employees, it has been conveyed to the undersigned that Oklahoma County District Attorney David Prater may have previously investigated, or currently is investigating (either officially or unofficially), his own "client" Defendant **KEVIN CALVEY**.

## **AUTHORITY AND ANALYSIS**

This on its face is a clear conflict of interest in accordance with Oklahoma The Oklahoma Rules of Professional Conduct, Rule 1.7(a), provides:

> (a) <u>A lawyer shall not represent a client if the representation of that client will be directly adverse to another client</u>, unless:
>     (1) The lawyer reasonably believes representation will not adversely affect the relationship with the other client; and

---

[4] Brett Dickerson, *Calvey could become county manager in CARES consulting firm contract*; available at https://freepressokc.com/calvey-could-county-manager-cares-act-consulting-firm-contract/

[5] *See Oklahoma County commissioner [sic] to run again after not being charged* (March 5, 2020); https://oklahoman.com/article/5656616/oklahoma-county-commissioner-to-run-again-after-not-being-charged

> (2) Each client consents after consultation.
>
> (b) <u>A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interest</u>, unless:
>
>> (1) The lawyer reasonably believes the representation will not be adversely affected; and
>>
>> (2) <u>The client consents after consultation</u>. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved. (emphasis added).

*Id.*

Likewise, Rule 1.10(a) prohibits "partners or associates" from representing a client, if any lawyer in the firm, practicing alone, would be prohibited from such representation. In this case, the "civil division" of the Oklahoma County District Attorney's Office appears to be conflicted by the "criminal division" with prior/current/potential criminal investigation(s) (whether formal/informal or official/unofficial) of members of the **BOCC**.

Loyalty and confidentiality are essential elements in the lawyer/client relationship. Loyalty may be compromised or impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for a client because of the lawyer's other responsibilities of interests. Confidentiality may be impaired, or the client may feel precluded from full and complete discussions with counsel, where the third party's interest becomes involved. Such a conflict

effectively forecloses alternatives which would otherwise be available to the client.

A similar case was addressed by the American Bar Association in its Formal Opinion No. 186 (1938).  A lawyer acting as a county attorney in civil matters only, had sought permission to represent and defend parties in criminal cases filed in the same county. In concluding that the lawyer could not represent criminal defendants, the committee opined:

> (F) or the county attorney charged with public duties to accept employment adverse to this public employer, puts the county attorney in an unseemly situation likely to destroy public confidence in him as a public officer and bring a reproach to his profession.

Rule 1.10 which governs the imputation of conflicts of interest to a "law firm."  In relevant part, it provides:

> While lawyers are associated in a "firm," none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not represent a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

By its language, the Oklahoma Rule 1.10(a) imputation analysis begins with an analysis of Oklahoma Rule 1.7. (Oklahoma Rule 1.9 deals with former clients, which is not relevant in the current matter at this time.)  If the

interests of the "firm's clients" are adverse, counsel at the "firm would have a concurrent conflict of interest under Oklahoma Rule 1.7(a), which states that a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client[,] or a third person[,] or by a personal interest of the lawyer.
> Oklahoma Rule 1.7(a).

Here the interests of the Oklahoma County Commissioner Kevin **CALVEY** (the elected "Chair" of the **BOCC**) would be directly adverse to his own attorney's interests, because he could be providing information to the detriment of the County of Oklahoma and that of the Oklahoma District Attorney. The Tenth Circuit has held that the conflicts principles that apply to joint representation of co-defendants at a single trial apply to representation of a defendant and a principal government witness. *United States v. Winkle*, 722 F.2d 605, 610 (10th Cir. 1983) ("we should apply the conflicts principles from the cases of multiple representation of defendants here where the defense counsel in this criminal trial had represented the principal Government witness in litigation with a factual relationship to some issues in this criminal case.").

As described in the *Benchbook for United States District Judges*, representation of parties with competing interests may "inhibit or prevent counsel from conducting an independent investigation in support" of separate clients and may prevent counsel from communicating information gathered from the other client. Section 1.08 at 30, *Benchbook for U.S. District Court Judges*, Federal Judicial Center (6th Ed. March 2013). Defendant **CALVEY** may have an interest in discrediting the **BOCC** to achieve his goal of keeping millions of dollars directed at the Jail Trust.

In addition, under Oklahoma Rule 1.7(a)(2), a concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client . . . ." Okla. R. Prof'l Conduct R. 1.7(a)(2). The Oklahoma County District Attorney's Office's lawyers owe their "clients" duties of confidentiality and loyalty under Oklahoma Rules 1.6(a) and 1.8(b), which generally prohibit a lawyer from "reveal[ing] information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation[,] or the disclosure is permitted by paragraph (b)." *See* Okla. R. Prof'l Conduct R. 1.6 cmt. [3] ("The principle of client-lawyer confidentiality is given effect by related bodies of law: the

attorney-client privilege, the work product doctrine and the rule of confidentiality established in professional ethics.

Therefore, material limitation conflicts under Oklahoma Rule 1.7(a)(2) would arise in the dual representation of both **CALVEY** and the **BOCC** whose interests may conflict because the "firm" lawyers could not disclose or use the other's confidential client information unless they obtained the informed consent of each client to do so with respect to each of their confidential information (especially if **CALVEY** in his official capacity was or is being investigated (officially or unofficially) by his "own attorney" in his official capacity). *See* Okla. R. Prof'l Conduct R. 1.6(a). Although it seems unlikely that either client would provide such consent given the antagonistic positions of the clients, the attorneys have stated that the firm will be obtaining such consent.

Significantly, the Tenth Circuit held that a potential conflict requires ongoing monitoring by the Court throughout the proceedings because even valid waivers can become invalid as the case progresses:

> [W]e do not suggest that a single waiver of a potential conflict is sufficient. Indeed, "a single waiver pursuant to rule 44(c) may not serve to waive all conflicts of interest that arise throughout the course of that defendant's criminal proceedings." *United States v. Swartz*, 975 F.2d 1042, 1049 (4th Cir. 1992). We agree that "[t]he district court has a continuing obligation under rule 44(c) to guard against conflicts of interest that may worsen as circumstances

change during the course of representation," id., possibly rendering a prior waiver invalid. *Id.*; *United States v. Akinseye*, 802 F.2d 740, 745 n. 3 (4th Cir.1986), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987).

*Id.*

The Supreme Court has acknowledged that the conflict of interest of a lawyer/law firm and his "client" analysis is difficult because it requires a degree of fortune-telling:

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.

*Wheat*, 486 U.S. at 162–63. The Supreme Court noted that the willingness of an attorney to obtain a waiver "may bear an inverse relation to the care with which he conveys all the necessary information to them." *Id.*

Thus, even with a valid waiver, the Tenth Circuit has emphasized that "the district court is 'allowed substantial latitude in refusing waivers of conflicts of interest.'" *United States v. Hunt*, 62 F. App'x 272, 276 (10th Cir. 2003) (citing *Wheat*, 486 U.S. at 163). There is a presumption in favor of retaining the defendant's counsel of choice. *Id.*

"However, the district court may refuse a waiver 'not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.'" *Id*.

## CONCLUSION

In light of all of the foregoing, the Plaintiffs are concerned there are several potential conflicts of interest that may arise from the Oklahoma County District Attorney's Office's concurrent representation of **KEVIN CALVEY** as the Chair and leader of the **BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF OKLAHOMA** (and member of the Jail Trust and proposed advisor in the administrating the funds at $450.00 an hour) all the while the same District Attorney's Office is adverse against its own "client" in the Oklahoma County District Court arising out of his involvement with CARES Act funds (or possibly conducting a formal or informal investigation into him). It is therefore requested that the Court immediately hold a hearing to ensure that **BOCC's** legal interests are not compromised and the Oklahoma County District Attorney's Office is not conducting (or directing) a criminal investigation (whether formal/informal or official/unofficial) into this specific Defendant (or

others). Commissioner **CALVEY** (or other members of the **BOCC**) can request the County to seek outside, independent counsel or representation through another District Attorney's Office.

Dated: November 28, 2020    Respectfully submitted,

*/S/ Robert D. Gifford*
ROBERT D. GIFFORD, OBA #17034
**Gifford Law, P.L.L.C.**
P.O. Box 2682
Oklahoma City, OK  73101-2682
T:  405.778.4647|405.810.5406
F:  877.295.0287
E:  Robert.Gifford@GiffordLawyer.com

**Pro Bono Counsel for the Plaintiffs**

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 28, 2020, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a notice of electronic filing to counsel of record.

*/s/ Robert "Bobby Don" Gifford*
ROBERT D. GIFFORD
ATTORNEY FOR THE PLAINTIFFS